UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:19-CR-00180-RGJ-1
CRIMINAL ACTION NO. 3:19-CR-00144-RGJ-1

UNITED STATES OF AMERICA     PLAINTIFF

VS.

JOSE FELIX GELACIO-MARTINEZ     DEFENDANT

### MEMORANDUM OPINION AND ORDER

Before the Court are the Motions of Defendant, Jose Felix Gelacio-Martinez ("Gelacio-Martinez" or "Defendant"), for Immediate Release Due to Danger from Coronavirus[1], Defense Counsel's Motion for Advice from U.S. Marshals, and an Emergency Motion to Set a Telephonic Hearing Date. The United States of America ("United States" or "Government") filed Responses in opposition to Gelacio-Martinez's Motions for release. Gelacio-Martinez did not file a reply. Fully briefed, these matters are ripe for adjudication.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the District Court referred these Motions to the undersigned Magistrate Judge for disposition. For the reasons set forth herein, Defendant's Motions for Immediate Release Due to Danger from Coronavirus and Emergency Motion to Set Telephonic Hearing Date are **DENIED**. Additionally, Defense Counsel's Motion for Advice from U.S. Marshals is **DENIED as moot**.

---

[1] To clarify, the Court must note that there are two separate, non-companion criminal actions pending against Gelacio-Martinez in this District. *See USA v. Gelacio-Martinez*, No. 3:19-cr-00144-RGJ ("*Gelacio-Martinez I*") *and USA v. Gelacio-Martinez*, No. 3:19-cr-00180-RGJ ("*Gelacio-Martinez II*"). In each case, Gelacio-Martinez filed an identical Motion for release. *See Gelacio-Martinez I* (DN 33). *See also Gelacio-Martinez II* (DN 34). Defendant's subsequent Motions for advice and telephonic hearing, however, were only filed in *Gelacio-Martinez II*. (DNs 37 & 44). That notwithstanding, because both cases involve the same defendant, and the subject Motions for release are duplicative, the Court shall resolve all Gelacio-Martinez's pending Motions in the instant Order. Additionally, unless noted otherwise, all docket number citations shall refer to the record in *Gelacio-Martinez II*.

## I. BACKGROUND

On August 7, 2019, Gelacio-Martinez was indicted and charged with one count of Reentry After Deportation/Removal, in violation of 8 U.S.C. § 1326(a) and (b)(1). *Gelacio-Martinez I* (DN 1). As provided in the Indictment, Gelacio-Martinez, an alien, was found in the United States after having previously been denied admission, excluded, deported, and removed from the United States on or about December 30, 2005, January 9, 2009, and October 5, 2020. (*Id.* at p. 1). Gelacio-Martinez initially appeared before this Court on August 8, 2019, and the United States moved for detention pursuant to 18 U.S.C. § 3142(f)(1). *Gelacio-Martinez I* (DN 8). The matter was set for arraignment proceedings and a detention hearing on August 12, 2019. (*Id.*). At the request of defense counsel, however, the detention hearing was continued. *Gelacio-Martinez I* (DN 11).

On August 14, 2019, a detention hearing was held before the undersigned Magistrate Judge. *Gelacio-Martinez I* (DN 13). At this hearing, the undersigned was presented with the arguments of the parties, the nature of the charges pending against Gelacio-Martinez, Gelacio-Martinez's criminal history, and the recommendation of the United States Probation Office. The undersigned determined that Gelacio-Martinez's prior criminal history, significant family or other ties outside the United States, lack of legal status in the United States, subject to removal or deportation after serving any period of incarceration, and use of aliases or false documents showed that he posed a danger to the community. *Gelacio-Martinez I* (DN 15). Thus, considering the factors set forth in 18 U.S.C. § 3142(g), the undersigned ordered Gelacio-Martinez to be detained concluding "[b]y clear and convincing evidence that no condition or combination of conditions of release will reasonable assure the safety of any other person and the community," and "[b]y a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required." (*Id.* at p. 2).

Subsequent to the detention hearing, Gelacio-Martinez was indicted in a second criminal action on October 16, 2019 and charged with one count of Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii), one count of Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(i), one count of Felon in Possession of Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of Unlawful Alien in Possession of Firearm, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2), as well as a Notice of Forfeiture. (DN 1). As provided in the Indictment, Gelacio-Martinez was previously convicted for the underlying felonies of unlawful entry into the United States after having been denied admission, excluded, deported, and removed, and criminal possession of a forged instrument in the second degree. (*Id*. at p. 3). Gelacio-Martinez was arraigned on October 24, 2019 and, through counsel, waived his right to a detention hearing. (DNs 10 & 11).

On March 22, 2020, Gelacio-Martinez filed the subject Motions for release. *Gelacio-Martinez I* (DN 33). *See also* (DN 34). Relatedly, Gelacio-Martinez also filed a Motion seeking advice from the U.S. Marshals Service, (DN 37), as well as a Motion moving the Court for a telephonic hearing, (DN 44).

## II. LEGAL STANDARD

18 U.S.C. § 3142(i) provides:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C § 3142(g) provides:

> **Factors to be considered.**--The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account

>the available information concerning--
>(1) the nature and circumstances of the offense charged [];
>(2) the weight of the evidence against the person;
>(3) the history and characteristics of the person, including --
>   (A) the person's character, *physical and mental condition*, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use of collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

(emphasis added).

18 U.S.C. § 3142(f)(2) provides:

>The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

### III. ANALYSIS

Gelacio-Martinez's Motions for immediate release argue that the recent pandemic related to COVID-19 serves as grounds for his release from detention pending trial. *Gelacio-Martinez I* (DN 33). *See also* (DN 34). Gelacio-Martinez argues that at the time of his detention hearing, a pandemic had not been declared and this declaration constitutes "changed circumstances" to be considered in the determination of whether there is a condition or set of conditions that can be

fashioned to assure his appearance at trial and protect the community. (*Id*. at p. 1-2). Specifically, Gelacio-Martinez argues that the conditions of confinement create the "ideal environment" for the spread of the Coronavirus. (*Id*. at p. 2). He further reasons that the Bail Reform Act requires this Court to release him to ensure his health and availability for trial. (*Id*. at p. 4). Thus, Gelacio-Martinez contends that release is warranted because local detention facilities "lack the resources necessary to engage in screening and testing of inmates[,]" making them ill-equipped to handle a potential outbreak of COVID-19. (*Id*.).

To support his position, Gelacio-Martinez relies on *United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993). In *Scarpa*, the defendant was terminally ill with AIDS and was in the final stages of his fatal illness. The court held that because the defendant could only receive necessary and humane treatment under the care of an AIDS specialist at a hospital, the defendant could be confined to a hospital under the 24-hour guard of the United States Marshal Service at his own expense. *Id.* at 89. The Court does not find this case to be factually analogous as Gelacio-Martinez does not have a chronic terminal illness requiring specialized treatment. The Court similarly finds Gelacio-Martinez's reliance upon *Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) to be without merit as it addresses the psychological toll of solitary confinement. Likewise, the Court finds *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) to be unpersuasive as the facts in that case involve custodial officials that failed to call medical aid for an inmate going into premature labor. None of these situations compares factually or procedurally to Gelacio-Martinez's current detention.

In opposition to Gelacio-Martinez's Motion, the United States argues that Gelacio-Martinez fails to rebut the factual basis that led to his detention. *Gelacio-Martinez I* (DN 35). *See also* (DN 42). The United States highlights, pursuant to the factors set forth in 18 U.S.C. § 3142(g)

upon which prior decisions regarding Gelacio-Martinez's detention were made, Gelacio-Martinez's criminal history and danger of flight risk. (*Id*. at p. 2). Specifically, the Government explains that due to the detainer placed on Defendant by Immigration and Customs Enforcement ("ICE") in *Gelacio-Martinez I*, should Gelacio-Martinez be released from federal custody, he would enter removal proceedings under ICE custody with the possibility of being removed from the United States while the current criminal matters are pending. (*Id*.). Thus, because the factors that led to the Order of Detention Pending Trial have not changed since Gelacio-Martinez was initially detained, the United States moves the Court to deny Gelacio-Martinez's Motions for release. (*Id*.).

Additionally, the United States maintains that Gelacio-Martinez's arguments concerning the current medical crisis related to COVID-19 are unpersuasive. (*Id*. at p. 2-3). In arguing that there is no evidence of an increased risk of coronavirus infection while in pretrial detention compared to the risk of infection that Gelacio-Martinez would face if released, the United States explains that local detention centers housing federal prisoners, including the Grayson County Jail where Defendant is being held, have implemented the following steps to counter the COVID-19 virus:

1. All employees and inmates are monitored for symptoms of respiratory infection;
2. All new inmates are screened by medical personnel for signs of respiratory infection and appropriate infection prevention practices are implemented;
3. Visits by non-essential personnel (programs, mentors, religious services, etc.) are suspended;
4. Inmate visitation is suspended;
5. Attorney/client meetings are being held by video conference or "through the glass" meetings;
6. "Clean teams" have been designated and provided personal protective equipment and supplies to frequently disinfect high traffic areas;
7. Hand sanitizer stations have been established and remain fully stocked; and
8. Individuals who may become symptomatic will be isolated.

6

(*Id*. at p. 3). Moreover, the United States represents that as of March 23, 2020, there are no confirmed cases of COVID-19 in this District's prisons and jails. (*Id*.).

Although not characterized as a reply, Gelacio-Martinez filed two additional Motions in support of his Motions for release. (DNs 37 & 44). Notably, in the Supplement to Request for Hearing, defense counsel claims that a prompt hearing is necessary because Gelacio-Martinez's physical condition has changed since his detention hearing. (DN 46).

The Court is keenly aware of the pandemic concerning the spread of COVID-19. But as concerning as the COVID-19 pandemic is, resolving Gelacio-Martinez's request for immediate release from detention must still involve an individualized assessment of the factors identified by the Bail Reform Act ("BRA"), which include *inter alia*: the nature and circumstances of the offense charged; whether the offense involves a controlled substance or firearm; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings); whether the defendant was on probation, parole, or other court supervision at the time of the current offense or arrest; and the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See e.g., United States v. Josh Gregory Taylor*, --- F.Supp.3d ----, No. 5:19-CR-192-KKC-MAS, 2020 WL 1501997, at *4-5 (E.D. Ky. Mar. 26, 2020) (rejecting the defendant's speculative argument that the dangerous nature of the COVID-19 pandemic supersedes those risks showcased by a BRA analysis).

In the subject Motions for release, Gelacio-Martinez does not provide the Court with any rebuttal of the original assessments that led to the decision to detain him. Instead, his initial arguments concern only the possibility of exposure to the Coronavirus while in detention. Moreover, Gelacio-Martinez does not rebut the United States' argument that local detention

centers have implemented precautionary and monitoring practices sufficient to protect detainees from exposure to the COVID-19 virus. *See United States v. Martin*, 2020 WL 1274857 (D. Md., Mar. 17, 2020). In fact, as of the entry date of this Order, the U.S. Marshal Service advised the undersigned that there are no reported cases of COVID-19 in the local detention facilities, including the Grayson County Detention Center. The Court thus reasons that while the opportunity for the spread of the Coronavirus does indeed exist in the jails, the possibility and reality of spread in the rest of the community exists as well.

Gelacio-Martinez's arguments for release also rest on the Court finding that he is a good candidate for release to home confinement. Gelacio-Martinez posits that he has the "incentive to abide by any release conditions the Court may impose[.]" (DN 34 at p. 6). However, the best predictor of how Gelacio-Martinez would behave if he were to be released is how he has behaved when released in the past, and his criminal history regarding compliance is a poor one. The Court, therefore, remains concerned regarding Gelacio-Martinez's ability to abide by any condition or set of conditions imposed for his release.

### IV. CONCLUSION AND ORDER

For the reasons provided above, and the Court being otherwise sufficiently advised;

**IT IS ORDERED** that Gelacio-Martinez's Motions for Immediate Release Due to Danger from Coronavirus (DNs 33 & 34) and Emergency Motion to Set Telephonic Hearing Date (DN 44) are **DENIED**.

**IT IS FURTHER ORDERED** that Defense Counsel's Motion for Advice from U.S. Marshals (DN 37) is **DENIED as moot**.

April 17, 2020

Regina S. Edwards, Magistrate Judge
United States District Court

Copies: Counsel of Record